PETERS TRUST COMPANY ET AL., RECEIVERS, APPELLANTS, V. R. D. KLEPPINGER, APPELLEE.

FILED FEBRUARY 13, 1924.  No. 22662.

Contracts:  VALIDITY.  The contract of sale, the main provisions of which are set forth in the opinion, examined, and *held* not to be void for lack of mutuality.

APPEAL from the district court for Gage County: LEONARD W. COLBY, JUDGE.  *Reversed.*

*George W. Wertz* and *E. O. Kretsinger*, for appellants.

*F. A. Safranek* and *F. A. Dutton*, contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ., REDICK, District Judge.

LETTON, J.

On September 29, 1920, the Wells-Abbott-Nieman Company entered into a contract with the defendant to sell 200 48-pound sacks of flour at the rate of $12.60 a barrel. The contract was in writing, was signed by the plaintiff's salesman and by the defendant, subject to confirmation by the plaintiff. It was afterwards confirmed, and 25 48-pound sacks were shipped, and received by the defendant. He later refused to receive the remainder of the flour purchased. This action is for damages for breach of the contract.

After the contract had been introduced in evidence, plaintiff attempted to show by the salesman that he had a telephone conversation with defendant early in December, 1920, in the course of which conversation the defendant refused to give shipping directions for any more flour, and refused to receive any more flour under the contract. This evidence was excluded by the trial court. A letter from the defendant to the plaintiff, dated December 11, 1920, was received in evidence. This letter contains a direction not to ship, and a refusal to take, any more flour under the contract. All testimony offered by the plaintiff to establish the amount of its damages was rejected. At the conclusion of the evidence on behalf of plaintiff, defendant moved that the jury be instructed to return a verdict for the defendant. This motion was sustained, and a verdict and judgment rendered accordingly.

We are unable to determine from the record the ground upon which this instruction was based. The only matter in the bill of exceptions which may throw light upon or explain the view of the trial court is a remark made in ruling upon the admissibility of evidence. When an objection to a question, made by defendant, was sustained, the following colloquy took place. "Mr. Kretsinger: The answer doesn't plead lack of consideration." "The Court:

But from a careful examination of that contract there is no obligation to deliver a pound of flour—they can change it or put it off to suit themselves."

We have not been favored with a brief or an oral argument on the part of the appellee stating or explaining the theory of the trial court. In the brief of the appellant it is said that when the peremptory instruction was given it was stated by the trial judge that the contract was not a mutual contract, was unilateral, was unfair to the defendant, and was void. Is the contract void upon its face for want of mutuality? Its provisions are lengthy, and it is unnecessary to set them forth in full. It recites:

"Wells-Abbott-Nieman Company, Schuyler, sells, and R. D. Kleppinger, of Liberty, Nebraska, buys the following commodities, subject to the terms and conditions stated herein and printed on the back hereof, which terms and conditions are binding on both parties to this contract and cannot be modified except by written consent of both parties, and no verbal conditions, warrants or modifications are valid."

The description of the property sold and the terms of payment then follow, with other provisions as to weights and package differentials that are not essential to the disposition of this case. By its terms the plaintiff sells and the defendant buys a specified quantity of flour to be delivered f. o. b. Liberty, Nebraska, and plaintiff is directed to ship 25 sacks at once. It is provided:

"That the commodities covered by this contract shall be order shipped within sixty (60) days from the date of the contract, unless a shorter time is herein specified; that the buyer shall furnish to the seller, not less than fourteen (14) days prior to the expiration of the contract period, such specifications and instructions as will permit the seller to ship: Provided, however, that the seller, on contracts covering a period of more than fourteen (14) days, shall have not less than fourteen (14) days from receipt of complete shipping instructions within which to make shipment."

Other provisions as to delivery are also found in the con-

tract, but none inconsistent with those quoted. The contract possesses all the incidents and elements of a contract of sale of goods for future delivery. The seller sells and the buyer buys goods at a fixed price and definite terms of payment, and the goods are to be delivered at a certain place upon shipping directions to be given by the buyer. It is neither unilateral nor void, so far.

Is there lack of mutuality in the provisions with reference to damages for a breach of the contract? Following are its provisions in this respect:

"Buyer's Nonfulfillment of Contract. That upon failure one the part of the buyer to furnish shipping instructions when due, or upon his failure to perform any other obligation under this contract, the seller may, upon notice to the buyer by telegram or letter addressed to the buyer's last known place of business, exercise the following options (a), (b), or (c):

"(a)   To cancel that portion of this contract on which there has been a default.

"(b)   To terminate that portion of this contract on which there has been default, with an entry charge to be paid by the buyer of fifty cents (50c) per barrel on flour and one dollar ($1.00) per ton on feed; and, in addition, the buyer shall pay to the seller such loss, damage and expense as may arise through his failure to carry out the provisions of this contract, less any freight included in the contract price, which shall be the difference between the contract price and the seller's cost of replacement at date of cancelation. For the purpose of this contract the seller's cost of replacement shall be determined at the option of the seller by either of the following methods: (1) The seller's cost of manufacturing and preparing for shipment an equal quantity of the commodities covered by this contract. (2) The price at which the seller could purchase an equal quantity of the commodities covered by this contract.

"(c)   Extend the shipping period for thirty (30) days, invoicing to the buyer as a carrying charge for fifteen cents (15c) per barrel on flour and thirty-five cents (35c) per ton

on feed for thirty (30) days or a fraction thereof; demand draft covering such invoice as provided herein may be made upon buyer when shipping instructions are due. Such extension of shipping period is not to be effective until buyer has honored draft against him for carrying charges herein mentioned. In the event that draft for carrying charges is not paid by the buyer on presentation, the seller shall then have the right to exercise clauses (a) or (b). At the end of any extended period seller shall again have the right to exercise clauses (a), (b), or (c).

"In the event that the buyer shall fail or refuse to pay for any shipment under this contract in accordance with the terms thereof, then the seller shall resell such shipment and the buyer shall pay all loss, damage and expense arising from such refusal, and the seller shall have the right of exercising options (a), (b), or (c) on the remaining portion of this contract.

"Seller's Nonfulfilment of Contract. That if the seller shall fail to make shipment in accordance with the terms and conditions of this contract, the buyer may, upon notice to the seller by telegram or letter addressed to the seller's home office, exercise either of the following options, (d), (e), or (f), with the understanding and agreement that the seller shall not be responsible for failure to ship according to the terms and conditions of this contract, where such failure is caused by any fires, strikes, labor difficulties, failure of carriers to furnish facilities, or other acts of carriers or other causes beyond the control of seller: Provided, that when such failure does exist the seller shall perform this contract within a reasonable time, in any event, not to exceed thirty (30) days from the termination of cause or conditions resulting in seller's inability to perform.

"(d)   To cancel that portion of this contract on which there has been default.

"(e)   To terminate that portion of this contract on which there has been default, with an entry charge to be paid by the seller of fifty cents (50c) per barrel on flour and

one dollar ($1.00) per ton on feed, and, in adddition, the seller shall pay to the buyer only such loss as results from the difference between the contract price and the market value of the commodities covered by this contract on the date of default at point of sale:   Provided, that should there be no established market value at point of sale on such date of default, then seller's cost of replacement on such date shall be deemed the market value.

"(f)    Extend the shipping period for thirty (30) days, it being understood that, at the end of the extended shipping period, the buyer shall again have the right to exercise options (d), (e), or (f)."

Under these provisions the liquidated damages to be paid by the buyer or by the seller, as the case may be, in case of breach of the contract, are practically reciprocal, and as nearly equal as the differing circumstances in the case of a breach by one party or the other would warrant.   There is no lack of mutuality in the contract in this respect.

The trial court sustained objections to nearly all the other evidence offered by the plaintiff to show a breach of the contract, and the amount of damages sustained by the seller on that account.   Complaint is made of the exclusion of this evidence, as well as of the peremptory instruction. We are satisfied that the court erred in the exclusion of much of the offered evidence.   It is apparent that the rulings upon the objections to evidence and the instruction to the jury were based upon a misapprehension of the terms of the contract.   The only questions raised or decided here are those relating to the mutuality of the contract.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED.